# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| SHERRI PERREAULT, an individual and FRED PERREAULT, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NDEX WEST, LLC, et al.<br><br>Defendants. | Case No.: SACV 10-00337-CJC(RNBx)<br><br><br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

## INTRODUCTION & BACKGROUND

Pro se Plaintiffs Sherri and Fred Perreault (collectively "Plaintiffs") brought this action against Defendants NDEx West, LLC ("NDEx"), Wells Fargo Bank, N.A. d/b/a

America's Servicing Company ("ASC"),[1] and U.S. Bank National Association ("USB") (collectively "Defendants") following the foreclosure and sale of their property.  The Second Amended Complaint ("SAC") alleges the following causes of action: (1) violation of the security first rule, (2) breach of oral contract, (3) breach of written forbearance agreement, (4) wrongful foreclosure, (5) promissory estoppel, (6) violation of California Civil Code §§ 2924j & 2924k, (7) negligence by ASC and USB, (8) negligence by NDEx, (9) negligence per se, (10) negligent hiring and supervision, (11) negligent misrepresentation, (12) fraud, (13) violation of California's Fair Debt Collection Practices Act ("FDCPA"), (14) conversion, and (15) violation of Cal. Bus. & Prof. Code § 17200.  Each claim is addressed below.

**ANALYSIS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In keeping with this liberal

---

[1] Although Plaintiffs plead that ASC is the d/b/a of Wells Fargo Bank, N.A., Plaintiffs often refer to them as if they were separate entities.  The Court will not treat them as separate entities, and will refer to ASC when the Plaintiffs' allegations concern ASC or Wells Fargo Bank, N.A.

pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### A.    Violation of Security First Rule (Cal. Civ. Proc. Code § 726) Against ASC and/or USB

Plaintiffs' first cause of action alleges that ASC, and USB violated California Code of Civil Procedure § 726 when ASC accepted payments of approximately $7,000 "to satisfy a portion of [Plaintiffs'] debt by attaching property other than the secured real property." SAC at 11.[2] Section 726(a) requires a "secured creditor, in a single action, to exhaust his security judicially before" obtaining a deficiency judgment against the debtor. *In re Prestige Ltd. P'ship-Concord v. E. Bay Car Wash Partners*, 234 F.3d 1108, 1114 (9th Cir. 2000). One of the primary purposes of the rule is to prevent a multiplicity of legal actions against a debtor. *Id.* at 1115. Here, it appears that Defendants did, in fact, pursue their security by foreclosing on the property. Plaintiffs provide no explanation as to how the Defendants alleged acceptance of payments that Plaintiffs made toward their outstanding debt could somehow be considered an action that operated, in conjunction with § 726, to bar the subsequent foreclosure. Accordingly, this cause of action is dismissed.

---

[2] The Court will cite to the SAC by page number. The Court's November 12, 2010 Order dismissing Plaintiffs' First Amended Complaint ("FAC") directed that "[a]ny amended pleading should contain sequentially numbered paragraphs and should be organized in an understandable manner." Dkt. # 26 at 2. The Court made this request because Plaintiffs' FAC contained pages that were out of order and paragraphs that were not logically numbered. Rather than comply with this instruction, however, Plaintiffs have opted to omit any paragraph numbers whatsoever in their SAC.

Because Plaintiffs have already been afforded two opportunities to amend their pleadings to attempt to allege viable causes of actions against Defendants, this claim—and others that are deficient—will be dismissed with prejudice.[3]

**B.     Breach of Written Forbearance Agreement & Oral Contract Against ASC and/or USB**

Plaintiffs' second and third causes of action allege that ASC provided Plaintiffs with a written forbearance agreement that Plaintiffs accepted but ASC and Plaintiffs later amended orally.  SAC at 8, 13.  Specifically, Plaintiffs allege that they received the written agreement from ASC on March 25, 2008 and accepted it on either March 25, 2008 or March 26, 2008.  SAC at 8.  Pursuant to the written agreement, ASC allegedly agreed not to foreclose on the property if Plaintiffs "immediately ma[de] a payment in the amount of $24,625.54."  *Id.*  Plaintiffs assert that they felt "forced into agreeing" to this forbearance agreement.  *Id.*  On the next day, March 26, 2008, Plaintiffs allege that they spoke to a supervisor or manager at ASC, Ms. Jackson, who "verbally agreed to amend the terms" of the written forbearance agreement.  *Id.*  Indeed, they contend that they "made multiple good faith payments to ASC pursuant to the terms of the . . . *verbally amended*" forbearance agreement.  *Id.* (emphasis added); *see also id.* at 13 (alleging Plaintiffs "complied with all of the terms and conditions of the Agreement except for those which were waived by ASC"). Despite their apparent payments, Plaintiffs allege that ASC "breached the Agreement by foreclosing on the PROPERTY within the term of the Agreement."  *Id.* at 13.

---

[3] This is also the first time that Plaintiffs have filed an opposition to a motion to dismiss filed by a Defendant.  Plaintiffs failed to file any response to Defendants' motions to dismiss both Plaintiffs' original Complaint and FAC.

With respect to Plaintiffs' claim for breach of written contract, Plaintiffs have alleged that "Plaintiff and ASC entered into a Forbearance Agreement that was subsequently amended verbally.  Pursuant to the *said agreement*, Plaintiff agreed to make monthly payments in exchange for Defendants' agreement not to foreclose . . . . [And] Plaintiff complied with all of the terms and conditions of *the Agreement* except for those which were waived by ASC."  *Id.* (emphases added).  In other words, Plaintiffs do not allege that ASC breached a specific term of the *written* forbearance agreement as it existed when Plaintiffs received it or that Plaintiffs complied with both the terms of the written agreement as well as the oral agreement.  Instead, Plaintiffs contend that they satisfied their obligations under the orally modified forbearance agreement—consisting of terms contained in the prior written forbearance agreement as well as new terms supplied by oral agreement between Plaintiffs and Ms. Jackson at ASC—but ASC breached its obligations by foreclosing.  In short, Plaintiffs' claim is for breach of the oral, modified forbearance agreement, not the written forbearance agreement.  Accordingly, the Defendants' motion to dismiss Plaintiffs' claim for breach of written agreement is GRANTED.


Turning to Plaintiffs' claim for breach of oral contract, the Court initially observes that Plaintiffs do not provide much detail regarding the terms of this alleged oral contract. Plaintiffs appear to allege that the oral contract modified the schedule for payments, SAC at 8 ("Plaintiff wrote down the amended payment schedule terms to memorialize the agreement for Plaintiff's records."), and altered the amounts that Plaintiffs would pay, *see id.* (asserting that ASC's initial demand that Plaintiffs pay $24,625.54 was "unconscionable and unlawful").  The contentions further indicate that the alleged consideration for the oral contract was Plaintiffs' agreement "to make monthly payments

in exchange for Defendant's agreement not to foreclose on the PROPERTY during the term of the" forbearance agreement.[4]  *Id.* at 13.

In light of these allegations, Plaintiffs' claim for breach of oral contract fails because the oral agreement lacked consideration.  The payments that Plaintiffs assert that they made to ASC pursuant to the alleged oral contract were not consideration because Plaintiffs, having previously defaulted on their repayment obligations, had a prior obligation to make such payments to ASC.  *See Reyes v. Wells Fargo Bank, N.A.*, No. No. C-10-01667 JCS, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011)[5] ("[A] claim for damages must be supported by consideration, but here, [p]laintiffs request as damages money which was already owed to [defendant], even though it was paid by [p]laintiffs to comply with the Special Forbearance Agreement.  It is well established that where the money paid under an agreement was already owed under a prior agreement, it is not consideration and cannot support a claim for damages."); *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1040 (2010)[6] (agreeing with the trial court's conclusion that

---

[4] Plaintiffs have also alleged that they "submitted various financial information and other documents" to ASC to "facilitate . . . loan modification" after ASC requested this information.  SAC at 7–8.  Plaintiffs have not, however, alleged that the submission of that information was in any way a part of the consideration supplied to ASC to support the oral contract.  *See Mehta v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ----, No. 10–CV–944 JLS (AJB), 2010 WL 3385020, at *9 (S.D. Cal. Aug. 26, 2010) (explaining that a benefit or detriment is not consideration unless it was actually bargained for in exchange for a promise).

[5] Technically, the court in *Reyes* reached this conclusion in the context of deciding that the plaintiffs' breach of contract claim failed because the plaintiffs could not "allege any cognizable damages."  2010 WL 30759, at *16.  The court observed that the defendant "ha[d] not argued that the [f]orbearance [a]greement was unenforceable" for lack of consideration and reasoned that it need not reach that precise question.  *Id.* at *16 n.6.  Respectfully, this Court believes that the relevance of this reasoning in a challenge to consideration is apparent.  The *Reyes* court acknowledged as much.  *See id.* ("The Court notes that [defendant's] argument that [p]laintiffs have suffered no cognizable damages also may have implications for the validity of the contract, to the extent that a contract that is not supported by consideration by the borrowers (because they have simply promised to pay money they already owed) is likely unenforceable.").

[6] In an earlier case, the California Court of Appeal acknowledged that this legal issue may arise, but it declined to express an opinion on the question based on the facts present in that case.  *See Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172, 1187 (1999) (explaining that it need not "decid[e] whether

appellants' promise to make a mortgage payment that was already due and owing would not constitute valid consideration because "appellants promised nothing more than respondent was due under the original loan agreement-monthly payments, plus interest and late fees").  Courts have reached this conclusion even after considering, and rejecting, the argument that California is a no recourse state where lenders may not have a remedy after foreclosing against a borrower.  *Reyes*, 2011 WL 30759, at *16 (explaining that even if a lender may not seek a deficiency judgment against a borrower after foreclosure under California law, "there is no authority that [this law] excuses a borrower from making payments under a deed of trust *prior* to foreclosure"); *see also Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, at *5–6 (S.D. Cal. Mar. 2, 2010) (relying on the same reasoning to reject a conversion claim against a lender).

Additionally, Plaintiffs' allegations are insufficient to indicate that this alleged oral modification was not void pursuant to the statute of frauds.  *See Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 167 Cal. App. 4th 544, 552–55 (2008) (holding forbearance agreements are subject to the statute of frauds); *id.* at 555–57 (refusing to estop statute of frauds defense where plaintiffs' partial or full performance was the payment of money); *see also Mehta v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ----, No. 10–CV–944 JLS (AJB), 2010 WL 3385020, at *9–10 (S.D. Cal. Aug. 26, 2010).  For these reasons, Defendants' motion to dismiss is GRANTED as to Plaintiffs' breach of written and oral contract claims.

//
//

a lender's false promises made to induce nonrecourse borrowers to continue to make loan payments can ever support a claim of fraud").

### C.   Promissory Estoppel Against ASC and/or USB

Plaintiffs' fifth cause of action contends that Defendants are liable under a promissory estoppel theory for failing to postpone the foreclosure sale as allegedly promised.  SAC at 15.  The elements of a promissory estoppel are "(1) a promise clear and unambiguous in its terms," (2) reliance, (3) the reliance must be reasonable and foreseeable, and (4) injury resulting from reliance.  *Aceves v. U.S. Bank, N.A.*, --- Cal. Rptr. 3d ----, No. B220922, 2011 WL 242426, at *4 (Cal. Ct. App. Jan. 27, 2011) (internal quotation marks omitted).

Promissory estoppel does not require typical consideration, and the doctrine permits a promisee to enforce a promise against a promisor where the promisee's detrimental reliance was reasonable and foreseeable and injustice can be avoided only by enforcing the promise.  *Garcia*, 183 Cal. App. 4th at 1040–41; *Aceves*, 2011 WL 242426, at *8.  For this reason, the failure of Plaintiffs' breach of oral contract claim based on lack of consideration does not immediately foreclose Plaintiffs' promissory estoppel claim.

Plaintiffs' claim for promissory estoppel also fails, however, because they have not adequately alleged detrimental reliance.  Plaintiffs have made several allegations in an attempt to establish detrimental reliance.  First, Plaintiffs rely on their argument that they made payments to ASC.  SAC at 15.  The implication of their allegations is that they would not have made those payments had they known that the foreclosure sale would still take place.  Consistent with the conclusion that these payments were not legal consideration, they also do not evidence detrimental reliance.  *See Newgent*, 2010 WL 761236, at *7 (finding payments made in an attempt to delay foreclosure sale did not constitute detrimental reliance because "[p]laintiff was already legally obligated to make payments on her mortgage"); *Secrest*, 167 Cal. App. 4th at 555–56.

Second, Plaintiffs assert they detrimentally relied because "had Plaintiff known that her home was being foreclosed upon . . . she could have taken legal action prior to the sale, including a Chapter 13 bankruptcy which would have allowed Plaintiff to bring the loan current through a plan of reorganization" or "could have explored the possibility of refinancing or marketing and selling the PROPERTY."  SAC at 15; *see also id.* at 23 (contending Plaintiffs "did not seek other remedies or pursue other options").  This allegation presents a closer question and requires a fact-intensive inquiry.

In *Mehta*, the plaintiff did not adequately allege detrimental reliance where the plaintiff made a "general and unsubstantiated reference to 'other options to avoid the foreclosure.'"[7]  2010 WL 3385020, at *11.  And in *Newgent*, the court found lacking the plaintiff's assertion that "she failed to take legal action to delay the trustee's sale" because the plaintiff did not "allege facts that could establish that [the] [p]laintiff would have been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession of the home."  2010 WL 761236, at *7.

In contrast, the *Garcia* court found reliance where a party acted to "procur[e] a high cost, high interest loan by using other property they owned as security."  183 Cal. App. 4th at 1041; *see also id.* (citing other cases where actions taken by borrowers established reliance).  In *Vissuet*, the court found the plaintiff had relied by "completing and submitting [a loan modification] application [after lender promised to postpone the sale if the plaintiff submitted the application], as well as by foregoing an opportunity to pursue alternate measures for avoiding the foreclosure."  *Vissuet v. Indymac Mortg. Servs.*, No. 09–CV–2321–IEG (CAB), 2010 WL 1031013, at *4 n.7 (S.D. Cal. Mar. 19,

---

[7] The *Mehta* court also rejected the contention that the plaintiff's completion and submission of a loan modification application evidenced reliance because the plaintiff took this action prior to the defendant promising to postpone the foreclosure sale.  2010 WL 3385020, at *11.  The same is true here.  *See* SAC at 7–8 (alleging Plaintiffs "submitted various financial information and other documents . . . to facilitate" a loan modification).

2010).  Lastly, in *Aceves*, the court concluded that the plaintiff detrimentally relied by "declining to convert her chapter 7 bankruptcy proceeding to a chapter 13 proceeding, by not relying on her husband's financial assistance in developing a chapter 13 plan, and by not opposing U.S. Bank's motion to lift the bankruptcy stay."  2011 WL 242426, at *5–6.

Based on this authority, this case is closer to *Mehta* and *Newgent* than the cases where reliance was adequately alleged.  In *Garcia* and *Vissuet*, the plaintiffs undertook affirmative actions that established reliance.  Unlike those cases, Plaintiffs contend that they relied by not taking actions that they *could* have taken.  Plaintiffs' allegations also compare unfavorably to those present in *Aceves*.  Although the plaintiff in *Aceves* ultimately chose not to pursue a chapter 13 bankruptcy, the plaintiff had taken affirmative action to explore the option, including developing a chapter 13 plan with her husband's assistance.  No similar allegation is present in Plaintiffs' SAC.  Plaintiffs' allegations are a bit more concrete than those in *Mehta* because Plaintiffs at least identified two potential courses of action (bankruptcy and finding a purchaser), but Plaintiffs do not plausibly allege that they *would* have pursued those options if they had not relied on ASC's alleged promise.  And while Plaintiffs assert that a chapter 13 bankruptcy "would have allowed Plaintiff to bring the loan current through a plan of reorganization," SAC at 15, that allegation lacks the factual support that would be necessary to find it plausible that a bankruptcy would have actually provided such a benefit.  *See Newgent*, 2010 WL 761236, at *7 (finding the plaintiff failed to plausibly allege that legal action "would have been successful").  Accordingly, Plaintiffs' promissory estoppel is dismissed with prejudice.

## D.    Wrongful Foreclosure Against All Defendants

Plaintiffs also fail to state a claim for wrongful foreclosure.  "Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale."  *Lane v.*

*Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1097 (E.D. Cal. 2010).  Plaintiffs advance several allegations in support of this claim.  None have merit.

First, Plaintiffs assert that their loan (1) "was sold or transferred to investors or other entities" such that "none of the Defendants in this action were beneficiaries or representatives of the beneficiary," (2) Defendants were not "assigned the promissory notes and deeds of trust executed by Plaintiff[s]," and (3) Defendants lacked the power to substitute trustees.  SAC at 13.  They urge that those allegations support their contention that the Defendants did not own the loans or have the power to foreclose on the property. These allegations are conclusory and devoid of sufficient factual support.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (mere legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations").

Next, Plaintiffs allege that the foreclosure was in violation of Cal. Civ. Code § 2924g(c)(1)(C), which permits "any trustor and any beneficiary or any mortgagor and any mortgagee" to agree orally or in writing to postpone sale proceedings.  This argument fails for the same reasons as Plaintiffs' flawed breach of written and oral contract claims.

Plaintiffs further allege that the foreclosure sale was wrongful because Defendants violated California Civil Code § 2923.5(a), which requires the mortgagee, beneficiary, or authorized agent to contact the borrower in person or by telephone to assess the borrower's financial situation and explore options to avoid foreclosure at least 30 days before the filing of a Notice of Default.  Plaintiffs allege that "[n]one of the Defendants assessed Plaintiff's financial situation correctly or in good faith prior to filing the Notices of Default."  But "the *only* remedy provided" for violation of § 2923.5 "is a postponement of the sale before it happens."  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 235 (2010).  Here, Plaintiffs cannot pursue a § 2923.5 claim because the foreclosure sale has already occurred and can no longer be postponed.

Another assertion in support of their wrongful foreclosure claim is that the Defendants did not have a security interest in the property at the time of foreclosure because they violated the security first rule.  SAC at 14.  That claim has already been rejected and does not provide a basis for Plaintiffs' wrongful foreclosure claim.

Plaintiffs' passing reference to California Civil Code § 2923.6, SAC at 14 (alleging Defendants "failed to comply with . . . [§] 2923.6"), is equally unavailing because there is no private right of action under that statute.  *See Mabry*, 185 Cal. App. 4th at 222 (explaining § 2923.6 "does *not* operate substantively" and "merely expresses the *hope* that lenders will offer loan modifications on certain terms").

Finally, a prerequisite to a wrongful foreclosure claim asserting "irregularity in the sale procedure" is an allegation that Plaintiffs are willing and able to "tender the amount of [their] . . . secured indebtedness."  *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996).  Plaintiffs do not allege ability or willingness to tender.  For all of these reasons, Plaintiffs' wrongful foreclosure claim is dismissed with prejudice.

**E.     Violation of Cal. Civ. Code §§ 2924j & 2924k Against NDEx**

Plaintiffs' sixth cause of action asserts that NDEx violated Cal. Civ. Code §§ 2924j and 2924k following the foreclosure sale of their property.  These statutes concern entitlement to and distribution of the proceeds of a foreclosure sale.  Pursuant to § 2924k, the trustee may deduct from the proceeds "the costs and expenses of exercising the power of sale and of sale, including the payment of the trustee's fees and attorney's fees permitted" and "the payment of the obligations secured by the deed of trust or mortgage which is the subject of the trustee's sale."  Cal. Civ. Code § 2924k(a)(1)–(2).

Plaintiffs allege that the property sold for $454,600.  SAC at 11.  According to them, the original debt amount was $406,500.  *Id.*  Plaintiffs assert entitlement to some or all of the $48,100 difference and allege that NDEx "wrongfully deducted its attorney's fees and costs in excess of $48,000."  *Id.*  In opposition, NDEx contends that there were no surplus funds obtained from the sale after the payment of the underlying obligations and costs.  In support, NDEx asks this Court to take judicial notice of the Trustee's Deed Upon Sale, which lists $454,644.00 as the amount of the unpaid debt together with costs.  Although judicial notice may be taken of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), the amounts of (1) Plaintiffs' indebtedness and (2) legally deductible costs and attorneys' fees are subject to reasonable dispute.  Accordingly, the Court will not take judicial notice of the Trustee's Deed Upon Sale to establish that there was no surplus.  *See Guzman v. Shewry*, 552 F.3d 941, 956 n.11 (9th Cir. 2009) (declining to take judicial notice of a letter purporting to contain a description of an official policy where "one [could] reasonably dispute whether the [entity's] description of the policy [was] consistent with the manner in which it [was] applied").  A factual dispute of this nature is best resolved on a motion for summary judgment.  For this reason, Plaintiffs' §§ 2924j and 2924k claim against NDEx may proceed.

### F.    Negligence Against ASC and/or USB

Plaintiffs' negligence claim against ASC and USB fails.  Plaintiffs must allege that these Defendants breached a duty that these Defendants owed to Plaintiffs, but they have failed to identify a theory under which these Defendants owe them a duty.  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan*

*Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991).  Here, Plaintiffs have failed to plead facts that would indicate that ASC or USB owed them a special duty.

## G.   Negligence, Negligence Per Se, and Negligent Hiring and Supervision against NDEx

In contrast, Plaintiffs' negligence and negligence per se claims against NDEx may proceed.  It is true that NDEx did not owe any special common law duties to Plaintiffs.  *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 335 (2008) ("The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary.  The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.  No other common law duties exist." (internal citation omitted)).  But Plaintiffs assert that Cal. Civ. Code §§ 2924j and 2924k imposed a duty on NDEx with respect to the distribution of foreclosure sale proceeds and that NDEx allegedly breached that duty.[8]  As explained, the Court cannot dismiss Plaintiffs' §§ 2924j and 2924k claims against Plaintiffs at this stage of the litigation.  Accordingly, Plaintiffs' claims for negligence and negligence per se may also go forward.[9]

On the other hand, Plaintiffs' claim for negligent hiring and supervision against NDEx is deficient.  Plaintiffs allege that NDEx "knew, or in the exercise of reasonable

---

[8] NDEx argues these claims fail because the Trustee's Deed Upon Sale establishes that there was no surplus resulting from the sale.  As explained, however, the Court cannot rely on the Trustee's Deed Upon Sale to conclude that there was no surplus in the context of this motion to dismiss.

[9] NDEx also cites *Kachlon* for the proposition that that a qualified privilege protects NDEx from tort claims.  This argument is unavailing.  The relevant portion of that case discusses affording certain legal protections to the recording and filing of certain nonjudicial foreclosure documents, such as a Notice of Default.  *See Kachlon*, 168 Cal. App. 4th at 343 (affirming judgment in favor of defendant on negligence and slander of title claims where claims were based on defendant's recording of a Notice of Default).  That authority does not, however, excuse NDEx's alleged failure to distribute funds in the statutorily prescribed manner following a foreclosure sale.

care should have known, that its employees and agents hired or retained to handle surplus funds claims were incompetent and unfit to perform." SAC at 20–21. Plaintiffs further assert that NDEx "fail[ed] to properly train and supervise its agents and employees." *Id.* at 21. Even assuming NDEx could be liable to Plaintiffs under this theory, Plaintiffs' contentions are entirely conclusory and unsupported by any factual allegations. *See Iqbal*, 129 S. Ct. at 1950 (mere legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations").

### H. Conversion Against NDEx

Plaintiffs have also claimed that NDEx is liable under a conversion theory for failing to properly distribute the alleged surplus obtained from the foreclosure sale. SAC at 25. Assuming for the purposes of this motion that Plaintiffs' allegations regarding a surplus are true, this claim also withstands dismissal.

### I. Fraud & Negligent Misrepresentation Against ASC and/or USB

Plaintiffs' eleventh and twelfth causes of action allege fraud and negligent misrepresentation. Fraud claims must meet the particularity requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires the pleader to "allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010). Negligent misrepresentation claims are a species of fraud and also must comply with Rule 9(b). *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of Am., Inc.,* 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (quoting *In*

*re Worlds of Wonder Sec. Lit.,* 694 F. Supp. 1427, 1433 (N.D. Cal. 1988)).  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Swartz v. KPMG LLP,* 476 F.3d 756, 764–765 (9th Cir. 2007) (per curiam) (quoting *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).

The elements of fraud are: (1) misrepresentation in the form of a false representation, concealment, or nondisclosure, (2) knowledge of falsity (scienter), (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage.  *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003).

The elements of negligent misrepresentation are similar to fraud, but this tort "does not require scienter or intent to defraud."  *Id.*  The elements are: (1) a representation as to a past or existing material fact, (2) the representation was untrue, (3) regardless of the speaker's actual belief, the speaker did not have a reasonable ground for believing the representation to be true, (4) the representation was made with the intent of inducing the plaintiff's reliance, (5) the plaintiff must have been unaware of the falsity of the representation and must have reasonably relied upon it, and (6) the plaintiff's reliance resulted in damages.  *See Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 402 (1989).

As an initial matter, Plaintiffs' fraud and negligent misrepresentation claims against USB fail because they do not comply with the requirements of Rule 9(b). Plaintiffs allege that USB misrepresented that no foreclosure sale would "occur during the loan modification process or during the term of the Forbearance Agreement."  SAC at 22.  They further allege that "oral representations were made by various employees of . . .

USB who were employed in the Loan Mitigation Division." *Id.*  These vague allegations fail to include the identities of the individuals that allegedly made these representations, when they were made, where they were made, or the specific content of these misrepresentations.  These allegations also improperly lump USB together with ASC without meaningful factual allegations to differentiate them.  As a result, Plaintiffs' fraud and negligent misrepresentation claims against USB are dismissed with prejudice.

Plaintiffs' claims against ASC are premised on the assertion that ASC represented to them that the foreclosure sale "would not occur during the loan modification process or during the term of the Forbearance Agreement" and that ASC failed to disclose certain information. *See* SAC at 22–23.  Specifically, Plaintiffs allege that on March 26, 2008, Ms. Jackson, a supervisor or manager at ASC, allegedly "agreed to amend the terms of the prior Temporary Forbearance Agreement.  During this conversation with ASC, Plaintiff wrote down the amended payment schedule terms to memorialize the agreement for Plaintiff's records." *Id.* at 8.

Plaintiffs have failed to plausibly contend that they were damaged by relying on ASC's alleged representations and omissions.  They allege that they made payments to "ASC . . . and/or USB" and that these Defendants "continued to accept payments from Plaintiff as though the Forbearance Agreement was in full effect" despite "intend[ing] to foreclose on the [Deed of Trust] regardless of the [Forbearance] Agreement." *Id.* at 23. This argument fails for the same reason that Plaintiffs' payments did not constitute detrimental reliance to support their promissory estoppel claim. *See Newgent*, 2010 WL 761236, at *7; *Secrest*, 167 Cal. App. 4th at 555–56. They further contend that they suffered various damages as a result of the foreclosure including losing their business and suffering emotional distress.  SAC at 23.  But these alleged damages were not caused by the representation or omissions specifically.  They were instead caused by the foreclosure itself, which Plaintiffs have not plausibly alleged they otherwise could have averted had

they not relied on the representation and omissions.  Accordingly, Defendants' motion to dismiss Plaintiffs' fraud and negligent misrepresentation claims is also GRANTED with prejudice as to ASC.

## J.   Violation of California's FDCPA Against ASC and/or USB

The factual allegations contained in Plaintiffs' thirteenth cause of action are primarily duplicative of their other claims and center around ASC's alleged misrepresentations concerning modification of the forbearance agreement.  *See* SAC at 24.  Elsewhere in the SAC, Plaintiffs allege that these misrepresentations were made in March 2008.  *Id.* at 8, 12.  To the extent that the claim is based on other vague actions, including that the Defendants "continued to demand and accepted payment from Plaintiff on a nonexistent debt" following the foreclosure sale, *id.* at 24, Plaintiffs have failed to plead when those actions occurred.  The statute of limitations for actions asserting violations of California's FDCPA, Cal. Civ. Code § 1788 *et seq.*, is one year.  Cal. Civ. Code § 1788.30(f) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation.").  Plaintiffs did not file this suit until July 27, 2009.  Accordingly, this cause of action is barred by the applicable statute of limitations because Plaintiffs' claim relies on conduct that allegedly occurred in March 2008.

## K.   Violation of Cal. Bus. & Prof. Code § 17200 Against All Defendants

Plaintiffs' fifteenth cause of action alleges violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200, and seeks restitution and injunctive relief.  SAC at 26–27.  That law prohibits acts or practices that are fraudulent, unlawful, or unfair.

Defendants' asserted liability under § 17200 is not based on any factual allegations unique to this claim.  Rather, the claim is derivative and based on allegations contained in other portions of Plaintiffs' SAC

This claim is dismissed with prejudice as to ASC and USB because Plaintiffs have failed to allege any viable cause of action against those Defendants.  Plaintiffs' § 17200 claim against NDEx may proceed.  Plaintiffs may have a viable § 17200 claim if they can demonstrate that NDEx acted "unlawfully" by failing to distribute the alleged foreclosure sale surplus in violation of Cal. Civ. Code §§ 2924j and 2924k.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  In conclusion, the followings claims are DISMISSED WITH PREJUDICE: (1) all claims against Defendants ASC and USB, (2) Plaintiffs' wrongful foreclosure and negligent hiring and supervision claims against NDEx.  The following claims will proceed: Plaintiffs' violation of Code §§ 2924j and 2924k, negligence, negligence per se, conversion, and Cal. Bus. & Prof. Code § 17200 claims against NDEx.

DATED:     February 10, 2011

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE